COMMONWEALTH of Pennsylvania,
Appellee

v.

Samuel MICKING, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 24, 2009.
Filed March 10, 2011.

BEFORE: FORD ELLIOTT, P.J.,
MUSMANNO, ORIE MELVIN,*
BENDER, BOWES, PANELLA,
DONOHUE, SHOGAN, and ALLEN, JJ.

### ORDER

PER CURIAM.

The Court, being evenly divided, the Order of the Court of Common Pleas is affirmed.

OPINION IN SUPPORT OF AFFIRMANCE by BOWES, J. joined by FORD ELLIOTT, P.J., PANELLA, J. and ALLEN, J.

OPINION IN SUPPORT OF REVERSAL by SHOGAN, J. joined by MUSMANNO, J., BENDER, J., and DONOHUE, JJ.

ORIE MELVIN, J. did not participate in the consideration or decision of this case.

OPINION IN SUPPORT OF AFFIRMANCE BY BOWES, J.:

Samuel Micking appeals the judgment of sentence that was imposed after he was convicted of two counts each of carrying an unlicensed firearm and persons not to possess firearms. He was sentenced to concurrent terms of twenty-four to forty-eight months imprisonment for persons not to possess firearms and eighteen to thirty-six months incarceration for carrying an unlicensed firearm. We would affirm.

The suppression hearing revealed the following facts. At approximately 8:30 p.m. on November 22, 2006, Philadelphia Police Officer Thomas Tamulis was patrolling in the area of Kingsessing and Alden Streets, Philadelphia, with his partner, Police Officer Patrick McDonald. He observed Appellant driving a car eastbound on Kingsessing Street. Without utilizing his turn signal, Appellant made a right turn onto Alden Street. The officers initiated a traffic stop to process the infraction of the Motor Vehicle Code.

Officer Tamulis approached Appellant, who was alone in the car, and asked for his license, registration, and insurance card. In response, Appellant informed him that his driver's license was suspended. Officer Tamulis decided to conduct a live-stop of the vehicle.[1] Appellant evidenced ex-

---

* Judge Orie Melvin did not participate in the consideration or decision of this case.

1. The Pennsylvania live-stop statute, as it is known, provides in pertinent part as follows:
(1) If a person operates a motor vehicle or combination on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.
75 Pa.C.S. § 6309.2.

tremely nervous behavior given the relatively minor nature of the traffic offense being processed. Specifically, Appellant "appeared to be very nervous and trembling. His hands were shaking." N.T. Suppression Hearing, 8/14/07, at 5.[2] In addition, Appellant's "voice was trembling." *Id.* at 7. This behavior concerned Officer Tamulis, and as a result, he conducted a protective weapons search of the interior portions of the vehicle accessible to Appellant. The search was conducted for Officer Tamulis's safety and his partner's safety. *Id.* at 7. Officer Tamulis stated that "based on [Appellant's] actions," the two officers "conducted a search of [Appellant's] immediate area," and, using a key, "recovered from the glove compartment of that vehicle two firearms." *Id.* at 6, 16.[3] Both of the guns were loaded, *id.* at 9, and one had its serial number obliterated. Appellant, who was previously convicted of a robbery and not permitted to possess a firearm, was at that point arrested and handcuffed. *Id.* at 13.

After performing the protective weapons search, Officer Tamulis returned to his vehicle to process the live-stop by calling a tow truck. He thereafter performed an inventory search of the vehicle, which revealed no further contraband. The tow truck arrived approximately thirty minutes later.

After litigating an unsuccessful motion to suppress the two weapons, Appellant proceeded to a nonjury trial where he was convicted of two counts each of the following violations of the Uniform Firearms Act: 1) persons not to possess firearms, 18 Pa.C.S. § 6105; and 2) carrying an unlicensed firearm, 18 Pa.C.S. § 6106. This

appeal followed imposition of the above-described judgment of sentence.

The appeal was submitted to a panel of this Court which concluded that Officer Tamulis's search of the vehicle was unjustified and reversed the judgment of sentence. *En banc* review was granted, and this appeal is now ready for disposition. Appellant raises the following issues: 1) "Whether the verdict was contrary to law"; 2) "Whether the court erred in denying Appellant's motion to suppress"; and 3) "Whether the verdict was against the weight of the evidence and counsel's motion for judgment of acquittal should have been granted." Appellant's brief at 4.

Appellant first argues that the evidence was insufficient to establish that he possessed the weapons found in the glove compartment of the vehicle. Contending that he was merely present in a car where weapons were found, Appellant asserts that this quantum of proof falls short of that necessary to sustain his convictions of the weapons offenses. When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we analyze:

> whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable [fact finder] to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Cousar*, 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007) (citing *Commonwealth v. Crews*, 436 Pa. 346, 348, 260 A.2d 771, 771–72 (1970)). In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means

---

**2.** The outside cover of the transcript is dated February 10, 2008, but the first page of that document indicates that the suppression hearing occurred on August 14, 2007.

**3.** Officer Tamulis never indicated that Appellant was ordered from the vehicle and twice stated that the glove compartment was searched because it was in Appellant's "immediate area." N.T. Suppression Hearing, 8/14/07, at 6, 13.

of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. *See id.,* 928 A.2d at 1032–33; *Commonwealth v. Chmiel,* 585 Pa. 547, 574, 889 A.2d 501, 517 (2005).

*Commonwealth v. Reed,* 605 Pa. 431, 990 A.2d 1158, 1161 (2010).

In this case, the two weapons were not located on Appellant's person; thus, the Commonwealth was required to establish that he constructively possessed those firearms. *Commonwealth v. Gutierrez,* 969 A.2d 584, 590 (Pa.Super.2009) ("Possession can be found by proving actual possession, constructive possession or joint constructive possession.") (quoting *Commonwealth v. Heidler,* 741 A.2d 213, 215 (Pa.Super.1999)); *see also Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983); *Commonwealth v. Sanes,* 955 A.2d 369 (Pa.Super.2008).

In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control. *Sanes, supra.* "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Valette,* 531 Pa. 384, 613 A.2d 548, 550 (1992) (quoting *Macolino, supra* at 134).

*Gutierrez, supra* at 590.

Our application of the legal fiction of constructive possession often arises when contraband is found in a car. As noted, all the attendant facts and circumstances are weighed to determine whether the Commonwealth proved the defendant's ability and intent to exercise control over the article in question. In the present case, Appellant was the sole occupant of the vehicle and was in possession of a key to the locked glove compartment. Thus, he had the actual ability to control the contraband. In addition, Appellant displayed behavior indicating consciousness of guilt, specifically, extreme nervousness, trembling, and shaking. *See Commonwealth v. Hughes,* 581 Pa. 274, 865 A.2d 761, 792 (2004) ("The conduct of an accused following a crime, including 'manifestations of mental distress,' is admissible as tending to show guilt.") (quoting in part *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A.2d 743, 747 (1953) ("mental distress, fear at the time of or just before or just after discovery of the crime" are indicators of guilt)). Hence, the evidence was sufficient to show that Appellant had both the ability and intent to exercise control of the two firearms located in the car that he was driving.

Appellant's attempt to equate this case to that of *Commonwealth v. Boatwright,* 308 Pa.Super. 41, 453 A.2d 1058 (1982), is unavailing. Therein, the defendant was sitting in the front passenger seat of a parked car that police were investigating. Two other men were also present in that vehicle. A gun was found on the left rear floor, where one of the other men had been located. The defendant was convicted of possession of that weapon, for which he had no license. We concluded that the evidence was insufficient to support his conviction, which was premised on his presence in the car and the fact that police had seen his body move toward the left rear of the vehicle. Police had not viewed the defendant's hands. Furthermore, the gun was properly registered to a woman,

and another woman, the driver's girlfriend, owned the car. We held that since the evidence established only that the defendant was present in a car where a registered firearm was found, it was insufficient to support his conviction. In this case, Appellant was the sole occupant of the car and possessed the key to the glove compartment where the guns were stored. His behavior also demonstrated consciousness of guilt. This case bears no resemblance to *Boatwright.*

Appellant next assails the suppression court's conclusion that Officer Tamulis was permitted to conduct a protective weapons search of the passenger compartment of the vehicle in which he was riding.

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980). Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 842 (2003). However, where the appeal of the determination of the suppression court turns on allegations of legal error, "the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 881 (1998).

*Commonwealth v. Foglia,* 979 A.2d 357, 360 (Pa.Super.2009) (en banc) (quoting *Commonwealth v. Kemp,* 961 A.2d 1247, 1252–1253 (Pa.Super.2008) (*en banc* )).

The standards for assessing the constitutional propriety of a protective search of the interior passenger compartment of a car for weapons were outlined in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and *Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721 (1994). In *Long, supra* at 1037, 103 S.Ct. 3469, the Supreme Court granted review to answer "the important question of the authority of a police officer to protect himself by conducting a *Terry*-type search of the passenger compartment of a motor vehicle during the lawful investigatory stop of the occupant of the vehicle." *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Long,* the defendant contended that a protective weapons search of a passenger compartment of a vehicle could not be supported under the *Terry* decision because *Terry* allows only protective patdown searches of a person's body. The *Long* Court disagreed and reasoned as follows.

The Supreme Court in *Terry* determined that a protective patdown search of a person's body without a warrant issued upon probable cause was constitutionally permissible with the existence of reasonable suspicion that the person was armed. In so doing, the *Terry* Court employed a balancing test between the need to search as against the invasion entailed by the search. That Court concluded that the brief intrusion occasioned by a patdown was reasonable when weighed against both society's interest in crime prevention and detection and the need of the police to protect themselves and others.

In deciding that similar protective searches of the passenger compartment of a car were constitutionally permissible, the Supreme Court in *Long* first noted that police "detentions involving suspects in vehicles are especially fraught with danger to police officers." *Id.* at 1047, 103 S.Ct. 3469

(citing *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (during traffic stop, police are permitted to order occupants to exit and if there is reasonable belief that they are armed and dangerous, to perform weapons frisk)). The Supreme Court further observed that according to a study, thirty percent of police shootings happen when an officer approaches a person seated in an automobile. *Long, supra* at 1048 n. 13, 103 S.Ct. 3469. The Court continued that even though personally unarmed, persons in a vehicle might have access to a firearm contained within the car. *See Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (places actually accessible to arrestee can be searched). The *Long* Court held:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *Terry,* 392 U.S., at 21, 88 S.Ct., at 1880. "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.,* at 27, 88 S.Ct., at 1883. If a suspect is "dangerous," he is no less

dangerous simply because he is not arrested.

*Id.* at 1049–50, 103 S.Ct. 3469 (footnote omitted). The Supreme Court ruled that "the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Id.* at 1051, 103 S.Ct. 3469.

The *Long* Court also rejected the position that when a defendant is under police supervision, a protective search of the interior of a car becomes unnecessary since the suspect cannot gain access to weapons that might be within the automobile. The Court reasoned that when not actually in police custody or under arrest, a person merely being detained at the scene retains the ability to reach into the car to gain access to a weapon:

> Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in Long's position break away from police control and retrieve a weapon from his automobile.... In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.... In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation "at close range," *Terry, supra,* 392 U.S., at 24, 88 S.Ct., at 1881, when the officer remains particularly vulnerable in part **because** a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger." *Id.,* at 28, 88 S.Ct., at 1883.

*Long,* 463 U.S. at 1051–52, 103 S.Ct. 3469 (emphasis in original).

Thus, in the event that the citizen is not securely in police custody, a police officer remains vulnerable to harm. A protective weapons search of a car's interior in such a situation is an appropriate manner in which to protect the officer and public from any possible danger as long as police have an articulable suspicion that the person detained is potentially dangerous.

In *Morris, supra,* our Supreme Court concluded that the *Long* holding comports with the Pennsylvania Constitution's protection against unreasonable searches and seizures and adopted the *Long* Court's reasoning. In *Morris,* the defendant contended that a protective weapons search of the passenger compartment of his vehicle was unconstitutional. Our Supreme Court disagreed.

In that case, police observed the defendant parked in an area where cars were not usually located and noticed another car parked across the street from the defendant's car. Police stopped their cruiser to observe. The second car's driver began to exit his car, stopped when he saw the police, reentered the vehicle, and drove away. The defendant also started to leave the area and made a turn without signaling. He was subsequently stopped for that vehicle code violation. When the police officer approached the defendant's car, the defendant leaned down toward the floor near the car's center console. Although ordered to place his hands on the steering wheel, the defendant disregarded that directive and, instead, briefly inserted his hand between his legs. He was then instructed to exit the vehicle and complied. As the defendant alighted, the police officer observed a two-foot metal pipe wedged between the driver's seat and the door. The defendant was ordered to place his hands on the rear trunk of the car and was patted down. No weapons were found. Police proceeded to search the vehicle's passenger compartment with a flashlight and discovered a bag on the front passenger's seat large enough to hold a weapon. The bag was opened and found to contain drugs.

In concluding that the search of the passenger compartment, including the bag, was valid, our Supreme Court adopted the reasoning of the *Long* decision. It held that the police officer had sufficient facts at his disposal to warrant a reasonably prudent man to believe that his safety "was compromised" sufficiently to allow for a protective weapons search of the vehicle's passenger compartment. *Morris, supra* at 723. The Court stated that the defendant's action of leaning briefly to his right toward the car floor and reaching between his legs prior to being ordered from the car were consistent with either hiding or reaching for a weapon. The Court further concluded that the existence of the metal pipe supported a belief that the defendant might have access to other weapons inside the vehicle.

Holding that a reasonable belief, based upon articulable facts, that a defendant may pose a danger to a police officer "entitles an officer to conduct a search of those portions of the passenger compartment of a suspect's vehicle in which a weapon could be placed," the Court upheld the search of the bag. *Id.* at 723–24. The Court observed that if the police officer had permitted the defendant to return to his vehicle without conducting a protective weapons search of those areas of access to the defendant, the officer would have faced "a grave risk that [the defendant] would remove a weapon from the bag and use it. Our constitutional safeguards do not require an officer to gamble with his life." *Id.* at 724.

In this case, Appellant concedes the validity of the vehicular stop but maintains that Officer Tamulis lacked probable cause to conduct a warrantless search of the car. Appellant's brief at 12. Appellant misperceives the nature of the search herein. Police did not conduct a warrantless search of the car for contraband; rather, they performed a protective weapons search of the interior passenger compartment, including, as expressly permitted by both *Long* and *Morris,* any containers where a weapon may be placed or hidden. In the present case, that container was the glove compartment, which actually did hold two loaded guns.

The issue before us is properly defined as whether the protective search of the glove box was fueled by reasonable suspicion that Appellant may have been armed and dangerous. We find as a matter of law that the following facts supported Officer Tamulis's articulated concern for his and his partner's safety and sufficiently established reasonable suspicion to support a weapons search. First, Appellant was extremely nervous, shaking and trembling, and his voice was quivering. There was no apparent reason for Appellant's extreme level of concern given the minor nature of the traffic infraction. As we noted *supra,* this type of conduct displays consciousness of guilt. Additionally, our case law provides that a defendant's display of excessive nervousness is a factor supporting the existence of reasonable suspicion. *See, e.g., Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185 (2004) (fact that defendant's hands were shaking and he evidenced extreme nervousness, together with other factors, provided police with reasonable suspicion that he was committing a crime). Second, roadside traffic stops are fraught with danger for police officers. As noted by the Supreme Court:

"According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." *Long, supra* at 1048 n. 13, 103 S.Ct. 3469. Third, it was approximately 8:00 p.m. on a November night, and the police officers faced a greater risk that Appellant could reach a weapon inside the car without being easily detected. *See In re O.J.,* 958 A.2d 561 (Pa.Super.2008) (*en banc* ).

We further observe that both *Morris* and *Long* support the opening of the locked glove compartment because it could have contained a weapon. Consider the following scenario: police limited their search to the passenger compartment and did not examine the glove compartment. Due to Appellant's suspended license, the vehicle was to be towed, and the police awaited the arrival of the tow truck, which, in this case, took thirty minutes. Appellant, who would not have been under arrest since the weapons were not discovered, could have possessed another key or some other means to access the locked compartment and the loaded weapons contained therein. Since it was nighttime, and since he was free to roam the area as he was not in custody, Appellant could have retrieved a gun in a surreptitious manner and used it on Officers Tamulis and McDonald.

We do not expect, nor do we believe Pennsylvania jurisprudence requires, police officers, whose trained professional judgment has been placed on alert by circumstances, to expose themselves to this danger. The stakes are too high; the infringement is too narrow; the risk is too great. Indeed, the protective search undertaken in this case may well have saved their lives that night.[4]

4. Tragically, Officer McDonald's life was lost in a later roadside encounter. On September

The *Long* Court expressly acknowledged that a defendant not in police custody can "break away from police control and retrieve a weapon from his automobile." *Long, supra.* That scenario was present herein and Appellant could have possessed other means of access to his locked glove compartment, validating the police officer's decision to unlock and search within it. The Tenth Circuit Court made the same observation in *United States v. Palmer,* 360 F.3d 1243 (10th Cir.2004). Therein, police conducted a protective weapons search based upon reasonable belief that the defendant may have possessed a weapon, and the scope of that search included a locked glove compartment. The Court rejected the defendant's challenge to the propriety of the opening of that secured container, reasoning:

> If Defendant had broken away from the officers, obtaining a gun from inside the glove box would have taken only a moment more than obtaining a gun from anywhere else within the passenger compartment. To be sure, the tasks of getting a key and unlocking the glove box would delay Defendant somewhat; but a suspect who is able to break free of officers detaining him could also seize the keys, and the suspect may have another means of entry to the glove box, such as a key that would not be detected during a proper frisk or a weapons search of the vehicle.

*Id.* at 1247.

Identical reasoning was employed in *United States v. Holifield,* 956 F.2d 665 (7th Cir.1992), where the defendant argued that police were unjustified in searching a locked glove compartment as part of a protective weapons search because all the occupants of the car were outside and could not have gained access to that locked container. The Court rejected that position. It first noted that police anticipated allowing the occupants of the car to return to the vehicle, in which case they could have retrieved any weapon located in the locked container. However, the Court additionally noted that "the Supreme Court has rejected the reasoning that because the occupants have exited the vehicle and are under the control of officers, the officers could not reasonably believe that they could gain immediate control of a weapon located inside the vehicle. In such a traffic stop, a suspect 'under the brief control of a police officer might break away from police control and retrieve a weapon from his automobile.'" *Id.* at 669 (quoting in part *Long, supra* at 1051, 103 S.Ct. 3469); *see also United States v. Goodwin–Bey,* 584 F.3d 1117 (8th Cir.2009) (upholding protective weapons search of locked glove compartment).

Herein, the police waited for the tow truck for thirty minutes, and Appellant was not placed under arrest until after the guns were found. Absent the discovery of those weapons, Appellant could have wandered the area while the police officers waited for the tow truck. It was night. Appellant could have gained access to the two guns in his car by opening the glove compartment with a hidden key or other device. We simply refuse to expose police to such danger. Thus, we conclude that the police had a reasonable and articulable basis to be concerned for their safety, the protective weapons search was constitutionally valid, and the motion to suppress was properly denied.

Appellant's final position is that the verdict was against the weight of the evi-

23, 2008, Officer McDonald was shot and killed after he initiated a vehicular stop. *See*

*www.odmp.org*

dence. This argument is waived under Pa.R.Crim.P. 607(A) as it was not raised orally at any time before sentencing or by a written motion filed before or after sentencing. *See Commonwealth v. Holley,* 945 A.2d 241 (Pa.Super.2008). Moreover, it is entirely repetitive of Appellant's previously-rejected challenge to the sufficiency of the evidence.

For all of the reasons discussed *supra,* we would affirm.

### OPINION IN SUPPORT OF REVERSAL BY SHOGAN, J.:

While we fully agree with the discussion in the Opinion in support of affirmance addressing the need for police officers to be protected in the line-of-duty, our review of the record regretfully compels us to register our dissent from the portion of the decision affirming the suppression court's conclusion that Officer Tamulis was permitted to conduct a protective weapons search of the locked glove box. Thus, for the reasons that follow, we would reverse.

The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Russo,* 594 Pa. 119, 126, 934 A.2d 1199, 1203 (2007) (citing *Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75 (2004)). Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.* However, it is also well settled that the appellate court is not bound by the suppression court's conclusions of law. *Id.* (citing *Commonwealth v. Duncan,* 572 Pa. 438, 817 A.2d 455 (2003)).

With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this [C]ourt. *Commonwealth v. Benton,* 440 Pa.Super. 441, 655 A.2d 1030, 1032 (1995) (citations omitted). In addition, questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl,* 834 A.2d 638, 641 (Pa.Super.2003).

The question before this Court is whether Officer Tamulis's protective search of Appellant's vehicle complied with the United States Supreme Court's decision in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and the Pennsylvania Supreme Court's decision in *Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721 (1994). In *Long,* the United States Supreme Court articulated the standard under which police may search the passenger compartment of a vehicle for weapons during roadside encounters with motorists as follows:

Our past cases indicate ... that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger com-

partment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

*Long,* 463 U.S. at 1049–1050, 103 S.Ct. 3469 (footnote and citations omitted).

In *Morris,* the Pennsylvania Supreme Court concluded that the rule announced in *Long* comports with Article 1, section 8 of the Pennsylvania Constitution. *Morris,* 537 Pa. at 422, 644 A.2d at 724. The Court in *Morris* explained that "[u]nder *Long,* such a reasonable belief based on specific articulable actions taken by appellant (*i.e.* specific articulable facts) entitles an officer to conduct a search of those portions of the passenger compartment of a suspect's vehicle in which a weapon could be placed." *Id.* at 422, 644 A.2d at 723.

In the instant case, the trial court offered the following analysis to justify the search conducted by the police:

Here the court is persuaded that the officers had reasonable suspicion to stop the vehicle in which Appellant was the operator. Officer Tamulis testified that he and his partner pulled over the vehi-cle after the Appellant made a turn without first activating the turn signal—thus violating the Motor Vehicle Code. He testified that when he and his partner stopped the vehicle, the Appellant admitted that his driver's license was suspended, and appeared to be nervous and trembling. The Appellant's statement in addition to his conduct caused the officers to have a reasonable suspicion that criminal activity was afoot. Therefore, **the officers had reasonable suspicion to conduct a patdown of the Appellant and to search his vehicle.**

Trial Court Opinion, 6/23/08, at 3–4 (emphasis added).

However, our review of the record reflects that the facts presented at the suppression hearing do not support the trial court's conclusion. As the Opinion in support of affirmance indicates, "[t]he issue before us is properly defined as whether the protective search of the glove box was fueled by reasonable suspicion that Appellant may have been armed and dangerous." Slip Op. at 14. Upon review of the transcripts, there is no doubt that Officer Tamulis failed to ask Appellant to exit the vehicle prior to the search of the passenger compartment and the glove box. Likewise, our review further indicates that, contrary to the statement of the trial court, Officer Tamulis failed to conduct a patdown search of Appellant for weapons. Rather, Officer Tamulis stated simply that he conducted a "protective pat down of the area" for his and his partner's "safety." N.T., 2/10/08, at 7.[1] Thus, the officer

---

1. The following transpired during cross-examination of Officer Tamulis, which clarified the order of events in the course of the stop of Appellant's vehicle:

Q: And after the stop, you took the keys out of the ignition, and did you go directly into the glove box, turn the key, and open it up with my client inside the car, is that correct?

A: Yes.

Q: That was almost simultaneously with checking the car? And then you determined that he might have said his license was suspended? .

failed to establish that he had a reasonable belief based on specific articulable facts, which would have entitled him to conduct a search of the portions of the passenger compartment of the vehicle in which a weapon could be placed pursuant to *Morris*.

It is our opinion that, if the officer was indeed concerned for his safety, he would have first directed Appellant to exit the vehicle and conducted a patdown of the Appellant before the officer searched the automobile and the locked glove box. Consequently, due to the state of the record before this Court, we are left to conclude that the trial court erred in its determination that Officer Tamulis possessed the necessary reasonable suspicion to justify a warrantless search of the locked glove box.

We find support for this conclusion in the multiple cases cited in the Opinion in support of affirmance pertaining to the legality of the protective weapons search of the passenger compartment conducted by the police. In the cases relied upon in the Opinion in support of affirmance, the searches of the vehicles were conducted in connection with patdown searches of the defendants. *See Michigan v. Long*, 463 U.S. 1032, 1036, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (subsequent search of motor vehicle was preceded by patdown search of the appellant); *Commonwealth v. Morris*, 537 Pa. 417, 419, 644 A.2d 721, 722 (1994) (subsequent search of plastic bag in motor vehicle was preceded by patdown search of the appellant); *In re O.J.*, 958 A.2d 561, 563 (Pa.Super.2008) (*en banc*) (protective weapons search of vehicle's console conducted after patdown search of the appellant and his passenger); *United States v. Palmer*, 360 F.3d 1243, 1245–1246 (10th Cir.2004) (one officer removed the defendant from the vehicle, patted him down, and sat him in the patrol car while the other officer searched the vehicle); *United States v. Holifield*, 956 F.2d 665, 666–667 (7th Cir.1992) (the defendant and passengers were searched prior to the police searching the stopped vehicle for weapons); *United States v. Goodwin–Bey*, 584 F.3d 1117, 1118 (8th Cir.2009) (police officers conducted patdown searches of vehicle's occupants prior to searching vehicle and its locked glove box). Here, the record plainly establishes that the police did not search Appellant for weapons at any time prior to the search of the vehicle. We question whether any officer, concerned for safety, would fail to search a vehicle's occupants prior to searching a locked glove box in a vehicle. For these reasons we register our dissent and would reverse on this issue.[2],[3]

---

A: After we determined it to be suspended, there was a live stop. That's when we did that, yes.
Q: So after you determined that, you take the keys from him while he is in the car, and you go into the glove box, and you take the guns out of the car?
A: I believe once I noticed the gun, yes.
Q: You took him out of the car?
A: Then we removed the handgun.
Q: And then you ran the license and confirmed that it was suspended?

A: That's correct.
Q: As far as the car itself, you take him out of the car? Then you talk about the live stop procedures.
A: Yes.
N.T., 8/14/07 (Suppression Hearing), at 14–15.

**2.** As the Opinion in support of affirmance indicates, the Courts of this Commonwealth are well aware of the ever present dangers posed to police officers on a daily basis. In-

deed, as the Opinion in support of affirmance notes in footnote 4, Officer Patrick McDonald, Officer Tamulis's partner, was tragically killed in connection with a subsequent roadside vehicle stop where the driver fled on foot and Officer McDonald was shot when he caught the suspect. Our condolences go out to the officer's family and fellow officers. While this tragic fact should have no bearing on the outcome of our decision in this matter, it serves to amplify the dangers faced by police officers and the necessity of officers to search suspects at the earliest opportunity when they believe that their safety is at risk. However, as expressed above, because the officers failed to conduct a patdown search of Appellant's person, let alone ask him to exit the vehicle before they conducted their search of the locked glove box, we must question the reasonableness of the search in this case.

3. We note that the trial court found the firearms were also admissible because the officers found them during an inventory search of the vehicle. An inventory search is an exception to the search warrant requirement of the Fourth Amendment. *Commonwealth v. Woody*, 451 Pa.Super. 324, 679 A.2d 817, 819 (1996). Such a search is permitted where: (1) the police have lawfully impounded the automobile; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. *Commonwealth v. Chambers*, 920 A.2d 892, 895 (Pa.Super.2007). The Commonwealth has the burden of demonstrating the inventory search of the car was conducted pursuant to a reasonable, standardized policy. *Commonwealth v. West*, 937 A.2d 516, 526–527 (Pa.Super.2007).

In this case, the officers performed the search of the glove box before they confirmed that Appellant's license was suspended. *See* N.T., 8/14/07 (Suppression Hearing) at 14–15. Furthermore, there was no evidence of record presented by the Commonwealth regarding the standardized policy pursuant to which the officers conducted an inventory search. Accordingly, the record in this matter does not support the trial court's alternative position that the guns were recovered pursuant to a valid inventory search.