J-S78024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CODY RUBINOSKY | |
| Appellant | No. 274 WDA 2016 |

Appeal from the Judgment of Sentence January 26, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002253-2015

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 14, 2017**

Cody Rubinosky appeals from the judgment of sentence entered January 26, 2016, in the Erie County Court of Common Pleas.  On November 20, 2015, a jury convicted Rubinosky of one count of persons not to possess, use, manufacture, control, sell or transfer firearms, one count of firearms not to be carried without a license, and one count of false identification to law enforcement authorities.[1]  The court imposed an aggregate sentence of 60 to 120 months' incarceration.  The sole issue on appeal is a challenge to the sufficiency of the evidence with respect to his two firearms convictions.  After a thorough review of the submissions by the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 4914(a).

parties, the certified record, and relevant law, we affirm the judgment of

sentence.

The trial court set forth the factual history as follows:

On July 27th, 2015, Pennsylvania State Troopers Joshua Zeigler and Jonathan Casey were patrolling around the area of Peach Street and Downs Drive, in full uniform and in a marked patrol vehicle, when they initiated a traffic stop on a dark-colored 2003 Cadillac sedan with an expired registration. The traffic stop was initiated in the northeast corner of the Walmart parking lot. Upon initiating the traffic stop, the driver, later identified as James Bigley, and the front seat passenger, later identified as Christine Kennell[e]y, stayed with the vehicle, but the backseat passenger, later identified as Appellant Cody Rubinosky, quickly exited the vehicle and "made a beeline," i.e. walked briskly, towards Walmart. Trooper Casey went after [Rubinosky], while Trooper Zeigler remained with Mr. Bigley and Ms. Kennell[e]y. Trooper Casey shouted "State Police!" multiple times to [Rubinosky], who did not stop, and upon reaching [Rubinosky] informed him "he [Rubinosky] was involved in the traffic stop" and had to return to the vehicle. Initially, [Rubinosky] did not comply and related to Trooper Casey "the only things that belong to him [Rubinosky] were on his person and nothing in that vehicle belonged to him [Rubinosky]."

While Trooper Casey was speaking with [Rubinosky], Trooper Zeigler spoke with Mr. Bigley and Ms. Kennell[e]y. Trooper Zeigler noticed "track marks" on Mr. Bigley's and Ms. Kennell[e]y's arms and asked if there was anything illegal in the vehicle, to which they responded there was drug paraphernalia in the vehicle. This gave Trooper Zeigler probable cause to initiate a search. When Trooper Casey brought [Rubinosky] back to the vehicle, [Rubinosky] was "extremely irate an acting kind of indignant." While Mr. Bigley and Ms. Kennell[e]y had a "calm demeanor," [Rubinosky] was "real upset, trying to distance himself from the vehicle and obviously indicating 'nothing in the vehicle belonged to him.'" Both troopers noticed a dark-colored or black backpack located in the back seat of the vehicle where [Rubinosky] had been seated. Based upon the information Trooper Zeigler received from Mr. Bigley and Ms. Kennell[e]y regarding drug paraphernalia in the vehicle, Trooper Zeigler "obtained probable cause to search the vehicle, which was

- 2 -

related to Trooper Casey," but did not conduct the probable cause search of the vehicle himself. Along with various forms of drug paraphernalia, a Stallard Arms JS-9 9mm firearm was found in the backpack that was positioned in the middle rear of the vehicle. [Rubinosky] was "doing a lot of pacing," and when the firearm was located, his pacing "began to intensify," his "demeanor changed drastically," and he was "acting really nervous." Upon discovering the firearm, Trooper Casey notified Trooper Zeigler that he found the firearm and had removed the magazine from the firearm. During the traffic stop, Ms. Kennell[e]y indicated to both Pennsylvania State troopers several times that the firearm belonged to [Rubinosky] and further indicated [Rubinosky] does carry around a black backpack.

When asked to provide identification, [Rubinosky] failed to produce any identification and stated his name was "Corey Francis Gulnac" and his birth date was 11/26/1989; however, upon investigation, Trooper Casey determined this information was false. When Trooper Casey confronted [Rubinosky] and asked whether he provided false information, [Rubinosky] continued to state "No, my name is Corey Francis Gulnac and that's my name;" however, in a side conversation, Ms. Kennell[e]y identified [Rubinosky] as "Cody Rubinosky." [Rubinosky] later admitted to providing false identification to Trooper Casey, but maintained "nothing in the vehicle belonged to him, including the drug paraphernalia and the firearm.

Trial Court Opinion, 4/14/2016, at 1-3 (record citations omitted).

Rubinosky was charged with one count of persons not to possess firearms, one count of firearms not to be carried without a license, and one count of false identification to law enforcement authorities. A one-day jury trial took place on November 20, 2015. At the conclusion of the trial, the jury convicted Rubinosky of all three counts. Subsequently, on January 26, 2016, the court imposed the following sentence: (1) a term of 60 to 120 months' imprisonment for the persons not to possess a firearm conviction;

- 3 -

(2) a concurrent term of 42 to 84 months' incarceration for the firearms not to be carried without a license conviction; and (3) a concurrent term of six to 12 months' incarceration for the false identification offense. Rubinosky did not file post-sentence motions but did file this timely direct appeal.[2]

In his sole issue on appeal, Rubinosky challenges the sufficiency of the evidence with respect to his two firearms convictions. Specifically, he states, "[T]he Commonwealth failed to present any evidence at trial that he actually possessed the firearm in question." Rubinosky's Brief at 7. In support of his argument, Rubinosky points to the following: (1) the firearm was found in the backseat of a vehicle belonging to Kennelley and Bigley; (2) Kennelley and Bigley were under the influence of heroin at the time of the incident; (3) contrary to statements Kennelley gave to police, she testified at trial that she did not remember who the gun belonged to and that she and Bigley had been living out of the car for a month and had given several individuals rides in that car, all of whom had ridden in the backseat; (4) Kennelley alleged that some of those passengers were drug dealers who were known to possess firearms; and (5) Kennelley stated she never

_____

[2] On March 4, 2016, the trial court ordered Rubinosky to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). We note neither the certified record nor the docket reveals that Rubinosky filed a concise statement. Nevertheless, in its opinion, the trial court indicated Rubinosky filed a concise statement on March 22, 2016. Neither party takes issue with this; therefore, we will infer that a concise statement was filed. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 14, 2016.

checked the back seat so she was unsure who owned the gun. ***Id.*** Additionally, Rubinosky states the Commonwealth failed to present any evidence in form of fingerprints or deoxyribonucleic acid ("DNA") to connect him with the gun. ***Id.*** Lastly, Rubinosky argues the Commonwealth did not present sufficient evidence to demonstrate constructive possession of the firearm because it only established he was sitting in the backseat of the same car where a backpack was found in the center of that backseat. ***Id.*** at 8. He notes the vehicle was unkempt and there were only two ammunition clips recovered from the vehicle – one in the gun and one in the glove compartment. Rubinosky states the only person who connected him to the firearm was Kennelley and she was high on heroin at the time of the stop. ***Id.***

We begin with our well-settled standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and

the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation

omitted).

The crime of persons not to possess firearms is defined as follows:

A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

The crime of firearms not to be carried without a license is defined as

follows:

Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Because the firearm was not found on Rubinosky's person, we also

note the Commonwealth may satisfy its burden by establishing constructive

possession:

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control.

- 6 -

To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

Here, the record reveals the following: Trooper Zeigler testified that on July 27, 2015, he and Trooper Casey conducted a traffic stop of a dark-colored Cadillac with an expired registration. N.T., 11/20/2015, at 18. The officers observed Rubinosky sitting in the backseat on the driver's side of the vehicle. ***Id.*** While the other passengers exited the car, Rubinosky "made his way around the vehicle and made a direct beeline towards the entrance of Wal-mart." ***Id.*** Trooper Casey followed after Rubinosky. ***Id.*** at 19. When Trooper Casey returned to the car with Rubinosky, Trooper Zeigler testified Rubinosky was acting "irate" and "indignant." ***Id.*** at 20. Trooper Zeigler also indicated he saw a dark-colored backpack "right in the middle of the backseat." ***Id.*** at 30. Inside the backpack, Trooper Casey discovered a Stallard Arms JS-9, 9 mm firearm. ***Id.*** at 62.

While Trooper Casey was searching the car, Rubinosky told the troopers that nothing in the vehicle belong to him. ***Id.*** at 21, 24-25. Trooper Zeigler indicated Rubinosky was very upset and "doing a lot of pacing." ***Id.*** at 21.[3] Rubinosky also provided the troopers with false

---

[3] During a search of the vehicle, Trooper Zeigler stated Rubinosky's nervousness and pacing "began to intensify." ***Id.*** at 21.
*(Footnote Continued Next Page)*

- 7 -

identification information. *Id.* at 22. Trooper Zeigler testified that the front seat passenger, Kennelley, eventually told him that the subject he was talking to was, indeed, Rubinosky. *Id.* at 23.[4] Kennelley also told the trooper that the firearm was Rubinosky's and he "needed [their] assistance in taking that firearm to Gander Mountain to trade it in for funds to get more funds to obtain heroin." *Id.* at 41. Lastly, Kennelley informed the trooper the backpack belonged to Rubinosky. *Id.*

Kennelley also testified at trial. On direct examination, she stated Rubinosky had been a family friend for a very long time. *Id.* at 48. She also indicated she could not recall telling the troopers Rubinosky was the backseat passenger, and that he had a gun and had asked Kennelley and her husband to drive him to Gander Mountain to sell that firearm. *Id.* at 49. On cross-examination, Kennelley stated she and her husband had been living out of the car for a month. *Id.* at 50-51. She indicated she had given rides to a handful of individuals during that period. *Id.* at 52-53. Kennelley testified a lot of the passengers were drug dealers who had guns, but she could not remember if any of them left their guns in her car, and she did not always check to make sure they did not leave their firearms. *Id.* at 53-55.

*(Footnote Continued)* ————————————

[4] Kennelly also indicated there was drug paraphernalia in the car. *Id.* at 31.

Lastly, Kennelley admitted she and her husband had used heroin on the day
in question. *Id.* at 52.

The trial court analyzed the claim as follows:

> After a thorough review of the facts and circumstances of the instant criminal action, together with a thorough review of relevant case law, this Trial Court concludes the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that [Rubinosky] "possessed" a firearm, and the jury properly found [Rubinosky] "Guilty" as to Counts 1 and 2 based upon the evidence presented. The facts and circumstances, considered in their totality, clearly establish [Rubinosky] had both the ability to exercise consciously his control over the firearm as well as his intent to exercise this control. First, the location of the firearm indicates [Rubinosky]'s constructive possession of said firearm. The firearm was located inside a black backpack, and said backpack was located "in the center of the back seat directly adjacent to where the defendant [Rubinosky] was seated," according to Troopers Zeigler and Casey. No other individuals were seated in the rear of the vehicle besides [Rubinosky] at the time of the traffic stop. Furthermore, during the traffic stop, the front seat passenger, Christine Kennell[e]y, indicated to both Pennsylvania State troopers that both the firearm and the black backpack belonged to [Rubinosky], and there was no evidence or statements from the other occupants in the vehicle that led the troopers to believe the firearm might have belonged or been in the possession of the other occupants. Finally, according to Trooper Jonathan Casey, the firearm was found with a magazine inside, which was eventually removed by Trooper Casey. A firearm functionality test, admitted at trial as Commonwealth's Exhibit 2, indicated the firearm was functional and capable of discharging the types of ammunition for which it was designed and manufactured.

> [Rubinosky]'s actions before and during the traffic stop also demonstrated his constructive possession of the firearm. The conduct of an accused following a crime, including "manifestations of mental distress," is admissible as tending to show guilt. *Commonwealth v. Hughes*, 865 A.2d 761, 792 (Pa. 2004). When the traffic stop was initiated by Troopers Zeigler and Casey, [Rubinosky] quickly exited the vehicle and

briskly walked towards Walmart. Trooper Casey stated "State Police" several times to [Rubinosky], who would not stop. When Trooper Casey made contact with [Rubinosky, he] became irate, uncooperative and continuously stated "nothing in the vehicle belonged to him." Upon being brought back to the vehicle, [Rubinosky] became extremely irate, acted indignant and continued to state "nothing in the vehicle belonged to him." [Rubinosky] began pacing during Trooper Casey's search of the vehicle, and when the firearm was discovered, [Rubinosky]'s pacing intensified, his demeanor changed drastically and he began acting very nervous. When asked for identification, [Rubinosky] gave the name "Corey Francis Gulnac" and the birthdate 11/26/89 and repeatedly gave this information; however, through an investigation, Trooper Casey determined this information was false. Christine Kennell[e]y identified [Rubinosky] as "Cody Rubinosky" in a side conversation with the troopers. [Rubinosky] ultimately admitted to Trooper Casey the information he gave was false. These facts and circumstances, considered in their totality, evidence [Rubinosky]'s "consciousness of guilt" regarding his possession of the firearm. *See* [*Commonwealth v.*] *Cruz*, 21 A.3d [1247,] 1253 (Pa. Super. 2011) ("consciousness of guilt" regarding firearms offenses was shown by Defendant giving police officer five or six different names and multiple birthdates); *see also* *Commonwealth v. Micking*, 17 A.3d 924, 926 (Pa. Super. 2011) (Appellant's behavior of extreme nervousness, shaking and trembling exhibited a "consciousness of guilt" regarding firearms offenses).

Therefore, in consideration of the totality of the facts and circumstances, together with a thorough review of relevant case law, this Trial Court concludes the Commonwealth produced sufficient evidence for the jury to find beyond a reasonable doubt that [Rubinosky] constructively possessed the firearm found inside the vehicle, as [Rubinosky] had both the ability to exercise consciously his control over the firearm as well as the intent to exercise this control. This Trial Court concludes [Rubinosky]'s issue is without merit.

Trial Court Opinion, 4/16/2016, at 6-8.

We agree with the court's well-reasoned analysis. Viewed in the light

most favorable to the Commonwealth, the evidence was sufficient to sustain

the trial court's finding that Rubinosky constructively possessed the weapon. Rubinosky was the only passenger in the backseat of the car adjacent to where the backpack, which contained the gun, was located in plain view. As such, one can reasonably infer the contraband was well within Rubinosky's reach.[5]  Furthermore, at the time of the car stop, Kennelley told the police the gun and the backpack belonged to Rubinosky.  Moreover, Rubinosky's flight towards the Walmart store after the stop and nervous behavior were both indicative signs of his guilt. **See Commonwealth v. Dent**, 837 A.2d 571, 576 (Pa. Super. 2003) (flight indicates consciousness of guilt, and "a trial court may consider this as evidence, along with other proof, from which guilt may be inferred."), *appeal denied*, 863 A.2d 1143 (Pa. 2004); **Commonwealth v. Micking**, 17 A.3d 924, 926 (Pa. Super. 2011) ("The conduct of an accused following a crime, including 'manifestations of mental distress,' is admissible as tending to show guilt.") (citation omitted), *appeal denied*, 31 A.3d 291 (Pa. 2011).

Additionally, with respect to Rubinosky's argument regarding the counter-evidence of Kennelley's testimony that she did not remember who the gun belonged to, we note this argument goes to the weight rather than the sufficiency of the evidence. The jury, sitting as the factfinder, "is free to

---

[5]  See **Commonwealth v. Flythe**, 417 A.2d 633, 634 (Pa. Super. 1979) ("It strains the imagination to believe that defendant innocently entered this vehicle having no knowledge of the items found therein when, the pistol at least, was within a few inches of him and a portion of it was in plain view.").

believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011) (citation omitted). Here, the jury chose to believe Kennelley's prior statements made to the troopers on the night of the incident, rather than her trial testimony.

Lastly, to the extent Rubinosky argues there was no DNA evidence connecting him to the gun, we find this of no consequence based on the remaining circumstantial evidence. *See Commonwealth v. Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012) (holding that the lack of forensic evidence was not fatal to the prosecution's case based on wholly circumstantial evidence), *appeal denied*, 62 A.3d 379 (Pa. 2013). Accordingly, we conclude there was sufficient evidence to enable the jury to find Rubinosky constructively possessed a firearm. Therefore, Rubinosky is not entitled to relief with respect to his sufficiency challenge regarding the firearms convictions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017

- 12 -