J-S43008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 39 WDA 2020 |

Appeal from the Order Entered December 10, 2019
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0000282-2019

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED: MARCH 5, 2021**

Appellant, M.H., a minor, appeals from the dispositional order entered after he was adjudicated delinquent on charges of possession of a firearm by a minor and carrying a firearm without a license.[1]  We affirm.

The juvenile court summarized the factual history of this case as follows:

> At the time of the adjudication hearing on this matter the only witnesses to testify were employed by the City of Pittsburgh Police Department.  One of these witnesses was called on behalf of [Appellant], Detective Sheila Ladner.  Detective Ladner testified that she had been employed in the Narcotics Division with the City of Pittsburgh for approximately 11 years.  On February 13, 2019 she was engaged in a Narcotic Suppression detail within the City of Pittsburgh.  Her duties were to attempt to buy drugs from potential drug dealers.  At that time, she was flagged down by someone driving an SUV at which time she approached the driver's window.  She was able to purchase from the driver 4 bundles of suspected heroin.  This [c]ourt takes judicial notice that heroin is sold in stamp bags, with 10 individual stamp bags

---

[1] 18 Pa.C.S. §§ 6110.1(a) and 6106(a)(1), respectively.

constituting what is known as a bundle. The detective was asked whether she saw [Appellant] in the backseat on the phone at the time of the sale, however she stated that she could not recall.

The Commonwealth presented in its case in chief, City of Pittsburgh Detective Michael Lafferty. Detective Lafferty was working in his capacity on February 13, 2019 as a City of Pittsburgh Detective as a member of what is known as a takedown vehicle. Once a pre-determined signal was provided by Detective Ladner, Detective Lafferty would immediately drive his vehicle and stop the suspect vehicle. He would then exit his vehicle and approach the occupants of the suspect car. Detective Ladner gave the signal that the sale of narcotics had occurred at which time Detective Lafferty, activated his emergency lights and stopped the vehicle parking directly behind it. As he exited his vehicle he observed a person through the rear window. He saw the rear seat passenger bend down toward the floor behind the driver's seat. Upon seeing this he began to shout "he's moving, he's moving." The person he observed in the rear passenger seat moving was later determined to be [Appellant]. A different detective began to remove the driver, and [Appellant] heard this detective shout upon opening the rear door "gun, gun." Detective Lafferty testified that he was able to observe, after the removal of [Appellant] from the vehicle, a pistol in plain view on the floor behind the driver's seat.

Also testifying [was] City of Pittsburgh Detective Andrew Shipp. Detective Shipp, was also working in the area and he as well would be operating in the takedown vehicle. Again, based upon the pre-determined signal, he exited his vehicle and approached the suspect vehicle on the driver['s] side. As he approached the vehicle, he observed through the driver['s] side rear passenger window [Appellant]. He saw him bend his body over, reaching down from his position in the rear passenger seat toward the floor behind the driver['s] seat. At no time did Detective Shipp see the driver reach toward the back seat of the vehicle. Upon opening the rear driver's side door, a firearm was seen, in plain view, on the rear driver['s] side floor where [Appellant] had been seen reaching. A crime lab report was submitted into evidence verifying that the firearm was a Glock pistol with a loaded clip, and in operable condition. Further, the Commonwealth presented evidence that [Appellant] was under the age of 18 at the time of the stop.

- 2 -

Juvenile Court Opinion, 5/27/20, at 2-3.

A petition alleging delinquency was filed charging Appellant with the crimes stated above. On November 21, 2019, the juvenile court held an adjudicatory hearing. At the conclusion of the hearing, Appellant was adjudicated delinquent on both charges. On December 10, 2019, the juvenile court entered a dispositional order, which committed Appellant to a juvenile placement facility. This timely appeal followed. Both Appellant and the juvenile court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the evidence presented by the Commonwealth was sufficient to support the adjudication of [Appellant,] a minor, for Possession of a Firearm by a Minor?

2. Whether the evidence presented by the Commonwealth was sufficient to support the adjudication of [Appellant], a minor, for Carrying a Firearm Without A license?

Appellant's Brief at 3.

Appellant's issues challenge the sufficiency of the evidence to support each of his convictions. In each issue Appellant argues that the Commonwealth failed to establish beyond a reasonable doubt that Appellant was in possession of the firearm present in the vehicle. Appellant's Brief at 11-14, 14-16. Specifically, Appellant asserts there was insufficient evidence to allow the fact finder to conclude that Appellant had constructive possession of the gun. *Id*. at 12-14, 15-16. We will address Appellant's issues together.

In addressing these claims, we are mindful of the following:

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348-349 (Pa. Super. 2013) (citation and quotation marks omitted).

In order to allow the juvenile court to adjudicate Appellant delinquent of possession of a firearm by a minor, the Commonwealth was required to prove that: (1) the weapon was a firearm as defined by the statute, (2) Appellant was in possession of the firearm, and (3) Appellant was under the age of 18 at the time of the offense. 18 Pa.C.S. § 6110.1(a).

Appellant also claims that the evidence presented by the Commonwealth was insufficient to establish carrying a firearm without a license. The relevant statute is 18 Pa.C.S. § 6106, which provides in pertinent part as follows:

Except as [otherwise] provided … any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Possession of a firearm is an essential element of Sections 6106 and 6110.1. To establish the element of possession, this Court has explained that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted*)*. Because the firearm was not found on Appellant's person, the Commonwealth was required to prove constructive possession to establish this element of the offenses. We previously have determined:

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Parrish*, 191 A.3d at 36–37 (internal citations and quotations omitted).

Additionally, we observe it is possible for two people to have joint constructive

- 5 -

possession of an item of contraband. *Commonwealth v. Hopkins*, 67 A.3d 817, 820-821 (Pa. Super. 2013).

Our application of the legal fiction of constructive possession occasionally arises when, as here, contraband is found in a common area where others have access. In these situations, all of the attendant facts and circumstances are weighed to determine whether the Commonwealth proved the defendant's ability and intent to exercise control over the item in question. *Commonwealth v. Miking*, 17 A.3d 924, 926 (Pa. Super. 2011).

In addressing whether there was sufficient evidence to establish Appellant had constructive possession of the firearm located in the SUV, the juvenile court offered the following analysis:

> In the present case, police on a Drug Suppression detail, purchased heroin from the driver of an SUV. Thereafter, back up police detectives activated their takedown lights, stopping the vehicle. Upon exiting their vehicles the detectives observed [Appellant] bend down from the rear passenger seat to the area directly behind the driver seat. This behavior occurred after the vehicle had been stopped by use of the police vehicle emergency lights. Upon removing the occupants, it was found that there was one person in the driver seat, and the only other person present was [Appellant] who was located in the rear passenger seat. This [c]ourt finds that the detectives were credible in their testimony that they were able to see [Appellant] in the furtive act of bending over toward the area where the firearm was found. Further, the [c]ourt notes that the firearm was in plain view to any person that would be seated in the backseat. Finally, at no time, was any evidence presented that the driver made any movement toward the rear seat. Therefore, based upon the totality of the circumstances, this [c]ourt found beyond a reasonable doubt a factual basis for the adjudication.

Juvenile Court Opinion, 5/27/20, at 5. We agree.

Upon review of the record in the light most favorable to the Commonwealth, we are likewise convinced that the juvenile court judge, sitting as the finder of fact, could conclude properly that Appellant constructively possessed the firearm beyond a reasonable doubt. The record reflects Detective Lafferty testified that he and a team of detectives approached an SUV that had just been involved in a drug transaction and Appellant was the sole passenger and seated in the rear passenger seat. N.T., 11/12/19, at 13, 22. The detective stated that as he approached the vehicle he witnessed Appellant lean his body totally down from the rear passenger seat towards the floor behind the driver's seat. *Id*. at 13. Detective Lafferty then called out to the other detectives, "He's moving, He's moving." *Id*. at 14. Detective Lafferty testified that as Appellant was being removed from the rear passenger seat, another detective announced, "Gun gun," to notify everyone present that a firearm was in the vehicle. *Id*. at 22. The detective stated that he "observed the firearm on the driver's side rear floorboard area." *Id*. Detective Lafferty further explained the location of the firearm as follows: "So like the rear seat, but on the driver's side. ... It was right in the area [Appellant] was leaning down towards." *Id*. at 23.

In addition, Detective Shipp testified that he approached the SUV from the driver's side of the vehicle. N.T., 11/12/19, at 37. The detective explained that he saw Appellant, seated in the rear of the vehicle, "reaching from the passenger side of the vehicle towards [the space] behind the driver's seat area

of the vehicle." ***Id***. at 37-38. In describing Appellant's actions, Detective Shipp noted, "[Appellant] quickly ducked to his left towards the driver's -- behind the rear driver's seat area and then popped back up in a seated position." ***Id***. at 38. Further, the detective testified that there were only two occupants in the vehicle and that he did not see the driver make any movement into the rear compartment area. ***Id***. Detective Shipp stated that he observed the firearm in the rear of the vehicle and recovered the gun. ***Id***. at 39-40.

This testimony from Detective Lafferty and Detective Shipp permits the finder of fact to determine that Appellant had constructive possession of the firearm. This evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish that Appellant committed the acts which constituted both firearm offenses. Hence, Appellant's contrary claim lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/5/2021