J-S59010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
MARLON BROWN, :
:
Appellant : No. 2562 EDA 2013

Appeal from the Judgment of Sentence Entered May 31, 2012,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0011141-2008.

BEFORE: SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 21, 2014**

Appellant, Marlon Brown, appeals *nunc pro tunc* from the judgment of sentence entered following his conviction for a violation of the Uniform Firearms Act, 18 Pa.C.S. § 6105(a)(1), persons prohibited from possessing firearms. We affirm.

On June 26, 2008, Appellant was arrested and charged with the aforementioned firearms offense, possession with intent to deliver, and conspiracy. Appellant's first jury trial commenced on November 16, 2010 and Appellant was found not guilty of possession with intent to deliver and conspiracy. The jury could not agree on the firearms charge, and a motion for a mistrial was granted on that charge.

_____

*Retired Senior Judge assigned to the Superior Court.

Appellant's second trial on the firearms violation was held on March 20–21, 2012. The trial court summarized the facts adduced at that trial as follows:

> Detective Andrew Callaghan of the Philadelphia Narcotics Unit testified that in 2008 he was on loan to the FBI Violent Crime and Gang Task Force. Notes of Testimony from March 20, 2012 (Hereinafter, N.T. 3/20/12), p. 64–65. Detective Callaghan received information that marijuana was being sold by a male known as Peanut at 1902 South 23rd Street in Philadelphia. *Id*., at p. 67. Detective Callaghan testified that he worked with Officer Reginald Graham of the Philadelphia police, who sent a confidential informant to that location on June 23, 2008. *Id*., at p. 67-68. The confidential informant purchased two packets of marijuana from Eloise Brown. *Id*. On June 24, 2008, Detective Callaghan conducted a surveillance of the property and observed Eloise Brown sitting on a plastic lawn chair in front of the house. *Id*., at p[.] 72-73. Ms. Brown engaged in two transactions wherein she was observed accepting a small item from an individual, entering the house briefly, and emerging from the house to hand a small item to them. *Id*., at 73–74. Detective Callaghan then prepared a search and seizure warrant for the property at 1902 South 23rd Street. *Id*., at p. 78.
>
> On June 26, 2008, Detective Callaghan and several backup officers arrived at the property to conduct the search pursuant to the warrant. *Id*., at p. 88. As the officers approached the screen door of the property, Detective Callaghan observed Ms. Eloise Brown, inside of the door, look up and yell "Police, clean up." *Id*. Detective Callaghan and other officers moved to the second floor of the home and encountered Appellant and another male, identified as Matthew Love, emerging from the second floor rear bedroom. *Id*., at p. 89-90. Appellant stated that he lived at the location, and Mr. Love stated that he did not. *Id*., at p. 91. Detective Callaghan brought Appellant to the dining room table to elicit his biographical information. *Id*., at p. 92. Appellant reiterated that he lived at 1902 South 23rd Street while giving Detective Callaghan biographical information. *Id*., at p. 97.

Officer Marilyn Brown asked Detective Callaghan to join her in the kitchen, which she was searching while Detective Callaghan questioned Appellant. *Id*., at p. 100. Officer Brown drew Detective Callaghan's attention to a blue soft cooler in a kitchen cabinet. *Id*. Inside the cooler was a Smith & Wesson Model 629 .44 caliber revolver loaded with six live rounds. *Id*., at p. 100–101, 108. Detective Callaghan told Officer Brown not to touch the revolver and that it should be guarded for fingerprints. *Id*., at p. 101. Detective Callaghan testified that when Officer Brown called him over to the kitchen, Appellant "kind of slouched clown in his chair, like this, and his shoulders went down." *Id*., at p. 103. Based on his observations, Detective Callaghan decided to read [A]ppellant his Miranda warnings at that time. *Id*., at p. 103-104. Appellant agreed to answer Detective Callaghan's questions. *Id*., at p. 105. Appellant said that he knew about the firearm and that he was "holding it for a guy named Rob," but that he did not know Rob's last name. *Id*., at p. 105-106. Detective Callaghan told Appellant that he would be submitting the firearm for fingerprints and asked Appellant if he had touched it. *Id*. Appellant responded that he had touched the firearm. *Id*. The firearm was placed on a property receipt and submitted to the Firearm Identification Unit of the Philadelphia Police. *Id*., at p. 111–113.

Detective Callaghan searched the second floor rear bedroom where Appellant was first encountered. *Id*., at p. 116–117. Detective Callaghan observed male clothing in the room and recovered one packet of marijuana, numerous unused packets, bags with marijuana residue, and $268 in United States Currency. *Id*.

Officer Joanne Gain of the Philadelphia Police Crime Scene Unit testified that she swabbed the .44 caliber revolver and the live and spent rounds for DNA. *Id*., at p. 193-194.

Counsel stipulated that an oral swab was taken from [Appellant] and submitted to the Philadelphia Police criminalistics lab for comparison with the firearm. *Id*., at p. 207–208. Counsel also stipulated that the .44 caliber revolver was examined by the Firearms Identification Unit, was found to be operable, and had a barrel length of six inches. *Id*.

Forensic Investigator Benjamin Levin testified that he was a DNA Analyst employed by the Philadelphia Police Department, and was admitted as an expert in DNA analysis. *Id*., at p. 210–213. Mr. Levin testified that he performed the DNA analysis from the samples taken from Marlon Brown and the revolver. *Id*., at p. 219. Mr. Levin's scientific conclusion based on the analysis was that Marlon Brown was included as a contributor to the DNA sample detected on a swab from the firearm, and that the probability of randomly selecting an unrelated individual who could be included as a contributor to the DNA was approximately 1 in 50,610 in the African American population, 1 in 545,900 in the Caucasian population, and 1 in 281,500 in the Hispanic population. *Id*., at p. 227.

Trial Court Opinion, 11/4/13, at 2–5.

The jury found Appellant guilty of violating the Uniform Firearms Act, and on May 31, 2012, he was sentenced to a five–to–ten year term of incarceration. Appellant filed a motion for extraordinary relief on June 6, 2012. The trial court never ruled on the motion nor does the record indicate that it was denied by operation of law.

On April 9, 2013, Appellant filed a notice of appeal. The post–trial unit of the First Judicial District informed Appellant's counsel that the notice was untimely and suggested filing a petition under the Post Conviction Relief Act requesting that Appellant's appellate rights be reinstated. On August 30, 2013, the court granted Appellant's motion to reinstate his appellate rights. The instant appeal was filed on September 4, 2013.

Appellant raises the following issues for review:

A. WAS THE EVIDENCE PRESENTED INSUFFICIENT TO SUPPORT THE VERDICT WHERE IT FAILED TO SHOW THAT THE APPELLANT WAS IN POSSESSION OF THE FIREARM?

B. DID THE PROSECUTION COMMIT MISCONDUCT WHEN IT INFORMED APPELLANT ON THE DAY THAT THE JURY TRIAL WAS SET TO BEGIN THAT IF THE APPELLANT'S MOTHER TESTIFIED SHE WOULD FACE PROSECUTION ON RELATED CHARGES THAT HAD ALREADY BEEN DISMISSED WITHOUT PREJUDICE?

Appellant's Brief at 6.

We first consider Appellant's claim regarding the sufficiency of the evidence supporting his conviction. Appellant contends that the Commonwealth failed to prove that he possessed the firearm that was discovered in the kitchen at 1902 South 23rd Street.

When examining a challenge to the sufficiency of the evidence:

The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011)). This standard is similarly applicable in cases where the evidence is circumstantial rather than direct, "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (quoting *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa. Super. 2003)).

Section 6105(a) of the Uniform Firearms Act, 18 Pa.C.S. § 6105(a), prohibits a person convicted of any of thirty–eight specified offenses enumerated in section 6105(b) from possessing, using, or controlling a firearm. The parties stipulated that Appellant had a prior conviction for murder, one of those defined offenses, and the jury was advised that the prohibited person element of the offense had been satisfied. N.T., 3/21/12, at 25. Thus, the sole challenge to the sufficiency of the evidence supporting Appellant's conviction is whether the Commonwealth proved that he possessed the firearm.

In the instant matter, because the subject firearm was not found on Appellant's person, the Commonwealth was required to establish that Appellant constructively possessed the gun. *Commonwealth v. Gutierrez*, 969 A.2d 584, 590 (Pa. Super. 2009) ("Possession can be found by proving actual possession, constructive possession or joint constructive possession") (quoting *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999)); *see also Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa.

1983); **Commonwealth v. Micking,** 17 A.3d 924, 926 (Pa. Super. 2011). "Constructive possession is an inference arising from a set of facts that establishes that possession of the contraband was more likely than not." **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa. Super. 2004) (quoting **Commonwealth v. Thompson**, 779 A.2d 1195, 1199 (Pa. Super. 2001) (internal citations omitted)).

Constructive possession is defined as "conscious dominion" which in turn, is defined as "the power to control the contraband and the intent to exercise that control." **Commonwealth v. Hopkins**, 67 A.3d 817, 820–821 (Pa. Super. 2013). Constructive possession may be established by the totality of the circumstances, **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super. 2012), and can be proven by circumstantial evidence. **Commonwealth v. Valette**, 613 A.2d 548, 550 (Pa. 1992) (quoting **Macolino**, 469 A.2d at 134). Furthermore, the fact that another person might have equal access and control to an object does not exclude a defendant's constructive possession. **Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa. Super. 1996).

Appellant challenges the sufficiency of the evidence supporting the jury's constructive–possession finding for three reasons: 1) there were other people living at the house and present when the search warrant was executed; 2) the gun was recovered from a common area, the kitchen,

which was accessible by anyone in the house; and 3) the DNA evidence linking the gun to Appellant was suspect because its presence could be explained by Appellant's sweat inadvertently dripping on the weapon.

Our application of the legal fiction of constructive possession occasionally arises when, as here, contraband is found in a common area where others have access. In these situations, all the attendant facts and circumstances are weighed to determine whether the Commonwealth proved the defendant's ability and intent to exercise control over the item in question. *Miking*, 17 A.3d at 926.

In the present case, Appellant, Appellant's mother, Eloise Brown, and a third person, Matt Love, were present at 1902 South 23rd Street when the search warrant was executed. Appellant told Detective Callaghan that he lived in the house with his mother. Matt Love, on the other hand, represented that he did not live in the house. While the search of the premises was being conducted, Appellant displayed behavior that the investigating detective construed as indicative of guilt. When Officer Brown summoned Detective Callaghan to the kitchen, Appellant reacted physically by hunching his shoulders and slouching in his chair. Appellant then told Detective Callaghan that he knew about the gun, stated that he was holding it for "Rob," and admitted touching the gun.

These uncontested facts refute each of Appellant's challenges to the sufficiency of the evidence. First, the testimony established that Appellant and Eloise Brown were the only residents of the subject premises. Second, the fact that Ms. Brown had equal access to the area where the firearm was discovered does not diminish the extent of Appellant's ability and intent to exercise control over the gun. *See Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (quoting *Valette*, 613 A.2d at 550) ("constructive possession may be found in one or more actors where item in issue is in area of joint control and equal access"). Third, Appellant admitted that he was holding the gun for a third person and, more significantly, admitted to touching the firearm—an activity highly probative of his control over the object. So, too, does this admission explain the presence of Appellant's DNA on the gun and defeat his assertion that its presence occurred by inadvertent and unwitting contact with the weapon.

Examining this evidence in its totality, and in a light favorable to the Commonwealth, we find that the jury could reasonably conclude that Appellant had both the ability and intent to exercise control of the firearm located in the cooler in the kitchen. Accordingly, there is no basis to disturb the jury's verdict that Appellant constructively possessed a firearm in violation of section 6105(a)(1) of the Firearms Act.

Appellant's second argument is that the prosecutor committed misconduct when she informed Appellant's counsel that Eloise Brown would be prosecuted on previously–withdrawn charges if she testified in her son's behalf. Appellant characterizes the prosecutor's activity as bullying the witness into not testifying. Appellant, however, has failed to preserve this issue for meaningful appellate review.

On the day before trial, the parties litigated a motion *in limine*. During the hearing on the motion, Appellant's counsel indicated that he would be calling Eloise Brown as his sole defense witness. Motion *in Limine*, 3/19/12, at 31. The following morning, additional *in limine* motions were presented to the trial court, including whether certain defense–proffered documents were admissible. Defense counsel explained that he had intended to call Eloise Brown to authenticate the documents, but that Ms. Brown recently had decided against testifying. N.T., 3/20/12, at 8. This decision was occasioned by the prosecutor's representation to Ms. Brown's attorney that her client could be re–arrested on the dismissed charges if she opted to testify. When Ms. Brown's counsel advised Ms. Brown of the possible consequences of her testimony, she invoked her Fifth Amendment right and elected not to testify. *Id*. at 38.

Appellant orally motioned for a mistrial, which the trial court denied. N.T., 3/20/12, at 27, 31. While the specific basis for the motion is muddled,

it did implicate the evidentiary fallout resulting from Ms. Brown's last-minute decision not to testify. Appellant complained that he was not given adequate notice of Ms. Brown's potential unavailability, *id*. at 27, and in the absence of her testimony, he was now unable to authenticate documents that might prove that Appellant did not live at 1902 South 23rd Street during the relevant period. *Id*. at 31. At no point, however, did Appellant allege that prosecutorial misconduct reasoned Ms. Brown's choice to remain silent. Consequently, his claim is waived for purposes of appeal. Pa.R.A.P. 302(a); **Commonwealth v. Sanchez**, 82 A.3d 943, 969 (Pa. 2013) (issues not raised in lower court are waived).

We make the additional observation that this Court rejected a similar claim of prosecutorial misconduct in **Commonwealth v. Smallhoover**, 567 A.2d 1055 (Pa. Super. 1989). In **Smallhoover**, the defendant in a criminal tax prosecution intended to call his father as a witness. At a sidebar conference, the prosecutor informed the court that the father's proposed testimony contradicted his prior statement to a revenue agent and could subject him to criminal liability. The prosecutor requested the court to advise the father of his right against self-incrimination and to have the father consult with his counsel. After conferring with his counsel, the father declined to testify.

On appeal, this Court rejected the appellant's argument that the prosecutor's statement to the court was improper and deprived him of a key witness. The *Smallhoover* Court observed that the Commonwealth's recommendation to the trial court that the defendant should consult with counsel about his privilege against self–incrimination could not be considered coercive. *Smallhoover*, 576 A.2d at 1060. Additionally, the Court found it "significant" that, as here, the witness decided not to testify only after consultation with counsel and was not approached directly by the prosecutor. *Id*.

Appellant's waived and meritless claim of prosecutorial misconduct does not provide a basis for appellate relief. Accordingly, the judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2014